

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JPL
F. #2012R01716

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 16, 2016

By Hand and ECF

The Honorable Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Samuel Mebiame
               Docket No. 16-M-752

Dear Judge Tiscione:

       The government hereby moves for a permanent order of detention against the defendant Samuel Mebiame.  Mebiame is a foreign national who is currently in the United States on a short-term tourist visa.  Mebiame was arrested by federal agents on August 16, 2016 on a complaint, which charged Mebiame with conspiring to bribe foreign officials in multiple African countries to obtain mining licenses, in violation of Title 18, United States Code, Section 371.  Prior to his arrest, Mebiame was scheduled to depart the United States for Qatar on August 17, 2016.  The government respectfully submits that Mebiame poses a significant flight risk as detailed below because he has considerable means and ties overseas, and minimal ties to the United States, and that, therefore, there are no conditions that would reasonably assure Mebiame's appearance in court as required.

I.      Background

       The defendant Samuel Mebiame, throughout his career, has met and established relationships with high-ranking government officials throughout Africa, including Gabon, South Africa, Guinea, Chad and Niger.  Mebiame used his network of contacts to serve as a "fixer" for a mining company that was owned by a joint venture between a U.S.-based hedge fund and a Turks & Caicos incorporated entity (the "Mining Company").  As a fixer, Mebiame paid bribes to high-ranking government officials in Niger and Chad to obtain mining rights—principally uranium concessions.  For example, in Niger, Mebiame paid more than $3 million in bribes to a high-ranking government official both directly and through the use of intermediary agents, who were selected by the government

official.  In addition, Mebiame made payments for luxury cars for the foreign official.  In return, Mebiame obtained licenses for uranium concessions from the government of Niger for the Mining Company.  Similarly in Chad, Mebiame paid cash bribes to a high-ranking government official and paid for luxury foreign travel for the official and the official's wife.  In return, Mebiame obtained uranium concessions for the Mining Company, including an asset which had been stripped from a French-owned company by the Chadian government.  Mebiame also engaged in corrupt conduct in Guinea, where he paid cash bribes to government officials and made other in-kind payments, which included luxury travel and arranging the rental of a private Airbus jet for a government official's use.  In return, Mebiame was given an exclusive opportunity, which he shared with the beneficial owner of the Turks & Caicos entity, to become a partner with a Guinean state-owned mining company.  This opportunity did not come to fruition at least in part due to negative press reports surrounding the deal.

Mebiame was paid millions of dollars for his work as a fixer on behalf of the Mining Company and the Turks & Caicos entity, including more than $2 million into overseas bank accounts in Cyprus.  In addition, the beneficial owner of the Turks & Caicos entity paid substantial expenses on Mebiame's behalf and provided him cash.  For example, in an e-mail dated August 27, 2012, Mebiame detailed not only his extensive foreign contacts and ability to travel but some of his expenses for which he sought repayment, including car rentals for "Rolls Royces, Porshe cars, Range Rovers, Mercedes, Ferrari, etc." for when his family visited him in Miami.

II.     Applicable Law

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  See 18 U.S.C. § 3142(e).  With respect to risk of flight, the Court must engage in a two-step inquiry.  "First, the court must make a finding as to whether the defendant presents a risk of flight if not detained.  Second, if the court finds that a defendant is likely to flee, then the court must proceed to the second step of the inquiry, namely, whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released."  United States v. Shakur, 817 F.2d 189, 194–95 (2d Cir.1987) (citations omitted).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person, including but not limited to their family and community ties, employment and financial resources; and (4) seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).

III.    Discussion

        The government respectfully submits that the defendant poses a serious flight risk and that there are no conditions that can reasonably assure the appearance of the defendant in court as required.  The defendant is a foreign national who has been charged with a serious felony offense and who has substantial ties overseas, including his family, property, work, and a number of bank accounts and companies.  The defendant is currently in the United States on a short-term tourist visa and will not have any status to remain in the country during the pendency of this matter.  During his trip, Mebiame has been residing at a hotel in Miami Beach, Florida.  He has no job in the United States and had no plan to remain in the United States when he traveled here on the tourist visa.  In addition, the evidence against the defendant is overwhelming and includes his own voluntary admissions made to federal agents on two separate days, highly incriminating e-mail messages, bank records, and other records that show the defendant's corrupt scheme.  The defendant has no ties to the United States that would cause him to appear in court and face the prospect of conviction and incarceration.

        The defendant has at least three bank accounts in foreign countries, including in Cyprus, of which the government is aware.  The government is aware of evidence that at least $2 million flowed into these accounts related to the Guinea scheme alone.  The government has previously identified residences the defendant owned in Gabon and Paris.  In addition, the defendant has a network of close contacts who are wealthy investors and high-ranking government officials in various countries across Africa, including Gabon, Niger, Chad, Guinea and South Africa.  Based on statements made by the defendant to federal agents and other evidence, the defendant has information about corruption by high-ranking government officials in at least Niger, Chad, Guinea and South Africa.  These officials would have a motive to help Mebiame flee the United States and avoid the possibility that a trial would shed further light on the foreign officials' own illegal behavior.  Mebiame's coconspirators outside of government, who have significant financial resources at their disposal, would have a similar motive to help him flee.  In the past, they have funded Mebiame's expenses and provided him significant financial assistance into bank accounts he once held (and has now closed) in the United States.  Mebiame would thus have extraordinary means available to him to assist in a flight from prosecution, including substantial financial assistance and possible foreign consular assistance to obtain travel documents.

    The government respectfully submits that on balance, the factors set forth by the Bail Reform Act, including the seriousness of the offense and the defendant's substantial overseas ties, weigh heavily in favor of a permanent order of detention in this matter to ensure that the defendant appears in Court as required.

                                        Respectfully submitted,

                                        ROBERT L. CAPERS
                                        United States Attorney

                    By:     _____/s/_____
                                        James P. Loonam
                                        Jonathan Lax
                                        David Pitluck
                                        Assistant U.S. Attorneys
                                        (718) 254-7520

                                        SANDRA MOSER
                                        Principal Deputy Chief, DOJ Fraud
                                        Section

                    By:     _____/s/_____
                                        Leo R. Tsao
                                        Assistant Chief
                                        James P. McDonald
                                        Trial Attorney
                                        (202) 598-2441

4